# TAB

# A

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D.C. 20227

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PUEBLO OF LAGUNA,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 02-24 L<br>Judge Francis M. Allegra |

**DECLARATION OF DEBRA DIENER**

I, Debra Diener, hereby declare, pursuant to 28 USC § 1746, as follows:

1. I currently am employed by the Department of the Treasury, Financial Management Service (FMS), as Chief Counsel. I have coordinated Treasury's efforts at the development of reasonable steps to comply with the orders of this Court, issued on March 19, 2004.

2. The Department of Treasury herewith submits its status report on the development of "a mechanism for monitoring compliance" with this Court's order of March 19, 2004. Each section of the status report was prepared by employees within the affected bureaus of the Department of the Treasury with personal knowledge of the facts set forth therein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 23, 2004.

Debra Diener

DEBRA DIENER

**Status Report on the U.S. Department of the Treasury's Compliance Monitoring Mechanism for *The Pueblo of Laguna v. United States***

In an order issued on March 19, 2004, the Court imposed several obligations on the United States. One of these obligations is to establish a mechanism for monitoring the government's compliance with its obligation to preserve documents, data, and tangible things. Another of these obligations is to file a status report with the Court describing that mechanism.

This status report describes (1) the plan that the U.S. Department of the Treasury ("Treasury") has established to satisfy its preservation obligation under the Court's order (the "preservation plan"), and (2) the mechanism that Treasury has established to satisfy its obligation to monitor its compliance with the plan (the "compliance monitoring mechanism"). This report has three parts:

- Because both the preservation plan and the compliance monitoring mechanism necessarily must describe the subject matter of the documents to be preserved, we discuss that topic first.
- The second part of this report describes Treasury's preservation plan.
- The third part of this report describes Treasury's compliance monitoring mechanism, *i.e.*, how Treasury will ensure and demonstrate that these documents are being preserved.

## I. Documents Covered by the Preservation Plan and Compliance Monitoring Mechanism

In Treasury's view, an effective plan for preserving documents and monitoring compliance requires that the documents covered by the plan be described clearly. The Court's order requires the Government to "take reasonable steps to preserve every document, data, or tangible thing in its possession, custody, or control, containing information that is relevant to, or may reasonably lead to discovery of information relevant to, the subject matter of the pending litigation." The boundaries of this broad description are inherently ambiguous, because no party can confidently identify all documents that might be subject to discovery at the outset of a case. At Treasury, there are literally thousands of good people, from clerks to managers, who need more certain guidance in order to apply this order to their daily business operations.

For these reasons, Treasury's report begins by defining more certainly the subject matter of documents, data, and tangible things covered by its preservation plan and compliance monitoring mechanism. This definition is overly broad, and we fully expect that Treasury will need further clarification from the Court as this case proceeds. We put

the definition forward now, however, in order to show our good faith efforts to comply with the Court's order.[1]

To the extent this litigation involves Treasury, its subject matter pertains to Treasury's asserted role as a co-trustee for funds belonging to the Pueblo of Laguna tribe. Our preservation plan and compliance mechanism cover documents pertaining to the activities we have undertaken, and will undertake, in this role:

- *The establishment of accounts in Treasury's central accounting and financial reporting accounting system.* In this regard, Treasury establishes accounts in Treasury's central accounting and financial reporting system for holding tribal trust funds, including funds belonging to the Pueblo of Laguna tribe.

- *The funding of government accounts.* In this regard, based on Interior's reporting, Treasury records the receipt of deposits, the classification (allocation) of those deposits to accounts, and the transfer of appropriated funds to accounts.

- *The investment of amounts in government accounts.* In this regard, at the request of Interior, Treasury invests amounts from the accounts in U.S. Government securities.

- *The redemption of investments in government accounts.* In this regard, at the request of Interior, Treasury redeems investments held in the accounts.

- *Assisting Interior with the disbursement of moneys.* Interior has authority to disburse funds from the accounts through the issuance of Treasury checks. At the direction of Interior, Treasury makes electronic payments and may issue check payments to recipients identified by Interior.

- *The government's accounting activities.* In this regard, Treasury produces account statements and posts account information for deposit-receipt, investment, redemption, and disbursement transactions of the accounts.

---

[1] The document retention order in *Cobell v. Norton* shows the benefit of defining the subject matter of covered documents. In that case, Judge Lamberth required Treasury to retain specific categories of financial records pertaining to the Indian plaintiffs. These categories, while overly broad and sometimes unclear, have been specific enough for Treasury to successfully administer the retention order. An excerpt from the *Cobell* order is attached.

We note that the documents, data, and tangible things described above may pertain to accounts that are specifically in the name of the Pueblo of Laguna tribe, as well as to summary level accounts. Prior to 1973, Treasury maintained in its central accounting and financial reporting system separate accounts for Indian tribes. In 1973, with the concurrence of the U. S. General Accounting Office, these separate accounts (totaling approximately 1,500 at that time) were consolidated on Treasury's books into summary level accounts. Treasury's preservation plan and compliance monitoring mechanism cover existing documents, data, and tangible things created before 1973 and after.

Treasury may also have processed purchases of marketable securities and savings bonds by Interior in trust for the Pueblo of Laguna tribe, and payments relating to Judgment Fund awards. Treasury's preservation plan and compliance mechanism covers any documents, data, and tangible things pertaining to these types of investments and payments that are in our possession, custody, or control.

## II. Treasury's Preservation Plan

### A. Treasury's Current Preservation Plan

Treasury's preservation plan relies in part on a successful structure that we developed to comply with a retention order in the *Cobell* case. Prior to that case, Treasury's practice had been to comply with record retention schedules approved by the National Archives and Record Administration ("NARA"). These schedules permitted Treasury to dispose of records – both trust and non-trust records – at the end of an approved retention period. Treasury ceased this practice for relevant records during *Cobell*, and instituted a rigorous program for protecting them.

The following practices developed during *Cobell* are part of our preservation plan for this case:

- Identifying those records, or systems containing records, that may reflect Treasury's activities as a co-trustee for Indian trust funds. Treasury's Financial Management Service ("FMS") and Bureau of the Public Debt ("BPD") are the Treasury bureaus that have the vast majority of such records for tribal trust funds. Each of these bureaus has created written inventories or narratives describing these records and their locations.

- Providing guidance and reminders, with periodic follow-up, to managers, employees, and relevant third parties about their obligation to preserve and maintain records covered by court orders.

- Maintaining back-up systems or procedures already in place for disaster recovery purposes.

- Suspending the disposal of pertinent records at federal record centers. As part of its normal practice in managing documents, Treasury sends records to NARA for maintenance in federal record centers under approved retention schedules. To preserve documents in *Cobell*, Treasury directed NARA to suspend destruction of documents in certain record groups, and Treasury issues periodic reminders to that effect. Some records relating to tribal funds may be in these record groups. If there are additional record groups that may contain materials covered by our preservation plan, we will issue additional instructions to NARA to preserve these documents.

**B. New Components of Treasury's Preservation Plan**

Treasury has instituted additional practices to ensure compliance with the Court's March 19, 2004 order:

- Following entry of the Court's March 19, 2004 order, FMS, BPD, and Main Treasury's Departmental Offices ("DO") each established a dedicated e-mail archive mailbox to house tribal-related e-mails and a dedicated repository to store voicemail messages related to this case. FMS, BPD, and DO distributed detailed, written instructions for using these storage mechanisms to their respective employees, and directed that they begin using those mechanisms immediately. FMS, BPD, and DO will issue periodic reminders to their employees to continue using these storage mechanisms.

- Following entry of the March 19, 2004 order, FMS, BPD, and DO each issued written directives to pertinent officials concerning the requirements in the Court's order. FMS, BPD, and DO will issue periodic written reminders to their employees.

In sum, Treasury has been, and continues to be, retaining vast categories of documents, data, and tangible things related to Treasury's activities in its role as a co-trustee for Indian tribal trust funds. The above-described preservation plan has proven to be effective and will continue to be employed in a good faith effort to fulfill Treasury's preservation obligations in this case.

**III. <u>Treasury's Compliance Monitoring Mechanism</u>**

**A. Treasury's Current Compliance Monitoring Mechanisms**

Treasury has been employing several mechanisms for monitoring compliance in *Cobell* that will continue in this case. These mechanisms are the following:

- DO, FMS, and BPD have established a clear expectation within their offices that any questions or concerns regarding record retention should be

raised with their legal counsel. These expectations have been set forth in writing and during briefings.

- Senior management at DO, FMS and BPD have been, and continue to be, actively involved in Indian tribal trust fund (and *Cobell*) litigation matters, including record retention. For example, retaining records subject to a court order has been, and continues to be, included as a managerial effectiveness element for annual performance ratings of the Assistant Commissioners at FMS and BPD. Assistant Commissioners are held directly accountable to the Commissioner of their bureau for monitoring and controlling their own office's compliance with retention orders and directives.

- Treasury utilizes orientation briefings, meetings, and periodic reminders to inform employees (including senior Treasury officials and political appointees) about the importance of preserving documents covered by a preservation order, and the importance of promptly reporting any destruction incidents involving such documents. DO employees have been instructed to notify the General Counsel's Office, and FMS and BPD employees have been instructed to notify their Chief Counsel's Office, if such records are destroyed. Treasury will continue to use these mechanisms to keep its employees mindful of these important requirements.

- Upon learning of any destruction incident involving documents, data, or tangible things covered by Treasury's preservation plan, Treasury will promptly report the incident to the Department of Justice. Treasury will subsequently follow up with a written report to the Department of Justice, analyzing the records that were destroyed (such as, whether they contained relevant information and whether the information can be obtained from other records).

**B. New Components of Treasury's Compliance Monitoring Mechanism**

In addition to measures already in place from *Cobell*, Treasury will be taking additional measures to monitor compliance with the Court's order and our preservation plan:

- We will periodically monitor dedicated e-mail and voicemail mailboxes to ensure they have no storage problems.

- We will issue periodic reminders that describe the documents we must preserve to all relevant employees. Copies of these notices will be available for inspection upon request.

- **We will ensure that we are keeping necessary electronic information pertaining to the trust functions listed above by querying the systems that retain this information. The ability of these systems to produce necessary data and documents upon request will demonstrate that these systems comply with the Court's order.**